UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **KENNETH E. FLICK**<br>5326 Presley Place<br>Douglasville, Georgia 30135<br><br>        Plaintiff,<br><br>    v.<br><br>**JEFFERSON B. SESSIONS, III,**<br>**Attorney General,** U.S. Department of<br>Justice in his official capacity as well as<br>his successors and assigns,<br>950 Pennsylvania Avenue, N.W.,<br>Washington, D.C, 20530-0001<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No. 17-529** |

# COMPLAINT

Plaintiff, Mr. Kenneth E. Flick, by through undersigned counsel, alleges as follows:

## I.   INTRODUCTION

1.   This civil action is a properly raised as-applied Second Amendment challenge to the federal firearms ban (18 U.S.C. § 922(g)(1)) brought by Plaintiff, who despite non-violent federal convictions in 1987 for counterfeiting cassette tapes, has become a "law-abiding, responsible citizen" entitled to use "arms in defense of hearth and home." *Schrader v. Holder*, 704 F.3d 980, 992 (D.C. Cir. 2013) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)).

2.   Mr. Flick made a mistake 30 years ago. Facing a financial crisis for his young family with his fledgling business, he import and sold bootlegged cassette tapes at flea markets in violation of U.S. criminal law, which has led to federal firearms ban. He received no prison sentence, restored the victim, the Recording Industry Association of America, of its losses and has since become a law-abiding, responsible citizen who has made valuable contributions to

the advancement of the automobile industry, American consumers, and his community.

3.  Mr. Flick seeks the restoration of his right to possess a firearm under the Second Amendment to the U.S. Constitution.

## II.  JURISDICTION AND VENUE

4.  This civil action arises under the Constitution and the laws of the United States. The Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1331, 1343, and 2201-2202.

5.  Defendant, the head of the Department of Justice, an agency of the United States and their officers acting within their official capacities, is subject to personal jurisdiction within the District of Columbia for purposes of the Constitution's Due Process Clause and the District of Columbia's long-arm statute.

6.  Venue lies in this judicial district under 28 U.S.C. § 1391 because Defendant is the head of any agency who resides in this judicial district.

## III.  PARTIES

### A.  Plaintiff

7.  Plaintiff Kenneth E. Flick is a natural person and citizen of Georgia and the United States, residing in Douglasville in Douglas County, Georgia. Mr. Flick intends to purchase and possess firearms for sport and for self-defense within his own home, but is prevented from doing so by application of 18 U.S.C. § 922(g)(1) arising from two non-violent felony convictions in 1987.

8.  Mr. Flick refrains from obtaining a firearm out of fear of arrest, prosecution, incarceration, and a fine under 18 U.S.C. § 922(g)(1).

### B.  Defendant

9.  Defendant Jefferson B. Sessions, III, is sued in his capacity as the Attorney General of

the United States. As Attorney General, Mr. Sessions is responsible for executing and administering laws, customs, practices, and policies of the United States, and is presently enforcing the laws, customs, practices, and policies complained of in this action.

## IV. FACTS

### A. Circumstances of the Federal Firearms Ban

10. From January 1, 1985 to June 18, 1986, under financial distress, Mr. Flick made a serious lapse of judgment. He defrauded the Recording Industry Association of America of income by facilitating the counterfeiting of cassette tapes in Taiwan, commingling these tapes in lawful shipments of stereo equipment into the United States, and selling them at flea markets in the southeast of the United States.

11. On May 26, 1987, U.S. Attorney Robert L. Barr and Assistant U.S. Attorney Kent Alexander for the U.S. District Court for the Northern District of Georgia swore out a two-count criminal information against Mr. Flick for criminal copyright infringement, 18 U.S.C. § 2319(b)(1)(A), and smuggling, 18 U.S.C. § 545.

12. On May 26, 1987, pursuant to a stipulation of civil settlement with the U.S. Attorney, Mr. Flick agreed to pay the U.S. Customs Service $24,987.15 for the release of the stereo equipment which had been commingled with the cassette tapes. *In re: 24,764 More of Less Speakers, 7,000 More or Less Speaker Parts, and 1324 More or Less Security Products Described in Customs Entry No. 86404766-5*, March 26, 1987.

13. Mr. Flick fully cooperated with the investigation, waived an indictment, and on June 5, 1987, pled guilty. *United States v. Flick*, Case No. CR87-206-A, Guilty Plea (N.D. Ga. Jun. 5, 1987). At the guilty plea, Assistant U.S. Attorney Alexander commended Mr. Flick for cooperating "significantly already" and for agreeing to cooperate against another individual and anybody else involved in the counterfeiting and smuggling operation.

14.     On July 21, 1987, the Government filed a Sentencing Memorandum and credited Mr. Flick for promptly acknowledging his "illegal conduct and cooperat[ing] with the government." *United States v. Flick*, Case No. CR87-206-A, USA Sentencing Memo, 1 (N.D. Ga. July 21, 1987). The Government further wrote:

> On May 14, 1985, when the FBI executed the search warrant and continuing to the present, Mr. Flick has been cooperative. He has met with U.S. Customs agents, FBI agents, and the undersigned counsel on more than one occasion for debriefings . . [he] has been very responsive to questions concerning the counterfeiting. He has additionally agreed to testify if necessary if any other prosecutions that may from flow from the case.

*Id.* at 8.

15.     The Government, pursuant to the plea agreement, agreed to make no recommendation as to the sentence, but reserved the right to recommend a fine. *Id.* at 8 ("considering Mr. Flick's limited resources, the government does not plan to recommend a substantial fine."). The Government requested, at a minimum, that Mr. Flick restore the victim, the Recording Industry Association of America, of the stipulated minimum loss amount of $184,549.00. *Id.* at 9.

16.     On July 21, 1987, U.S. District Judge Orinda D. Evans sentenced Mr. Flick to four months in a half-way house for Count Two (smuggling cassette tapes) and to five years of probation for Count One (counterfeiting), an order of restitution in the amount of $184,549 to the Recording Industry Association of America, and 150 hours of community service. *United States v. Flick*, Case No. CR87-206-A, Judgment and Sentence, 1 (N.D. Ga. July 21, 1987). The Court expressly authorized the U.S. Probation Office to arrange a lesser amount for restitution subject to the consent of the Recording Industry Association of America. *Id.*

17.     On November 2, 1988, pursuant to an agreement between the Recording Industry Association of America, the U.S. Attorney's Office, the U.S. Probation Office, and Mr. Flick,

Mr. Flick filed a motion to amend the judgment to reduce the restitution to a lump sum of $60,000 and for the early termination of Mr. Flick's adjudged five-year period of probation. *United States v. Flick*, Case No. CR87-206-A, Mot. to Amend Judgment, 1 (N.D. Ga. Nov. 2, 1988). The U.S. Attorney and the U.S. Probation Office consented to the relief, and requested that Mr. Flick's probation be limited to two years from the date of his sentencing, effective July 21, 1989.

18.     On November 4, 1988, U.S. District Judge Orinda D. Evans amended Mr. Flick's sentence by reducing the restitution to a lump sum amount of $60,000 and reducing the period of probation to two years, to end on July 21, 1989. *United States v. Flick*, Case No. CR87-206-A, Am. Judgment (N.D. Ga. Nov. 4, 1988).

                B.     <u>Federal Firearms Ban under 18 U.S.C. § 922(g)(1)</u>

19.     Title 18 U.S.C. § 922(g)(1) prohibits the possession of firearms by any person convicted of "a crime punishable for a term exceeding one year." Violation of this provision is a felony criminal offense punishable by a fine and imprisonment of up to ten years. *See* 18 U.S.C. § 924(a)(2).

20.     Title 18 U.S.C. § 922(d)(1) prohibits anyone from transferring firearms or ammunition to anyone whom the transferor has reason to know was convicted of "a crime punishable by imprisonment for a term exceeding one year." Violation of this provision is a felony criminal offense punishable by a fine and imprisonment of up to ten years. *See* 18 U.S.C. § 924(a)(2).

21.     All firearms purchasers within the United States who do not possess a Federal Firearms License, meaning, virtually all ordinary civilian consumers of firearms, must complete "Form 4473, Firearms Transaction Record Part 1 – Over-The-Counter," administered under Defendants' authority, in order to purchase a firearm. 27 C.F.R. § 478.124. Question 11(c) on Form 4473 asks:

> Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentencing including probation?

22. Firearms dealers are not permitted to sell firearms to anyone who answers "yes" to this question.

        C.      <u>Mr. Flick's Law-Abiding Nature and Responsible Citizenship</u>

23. The 1987 federal convictions for counterfeiting cassette tapes are Mr. Flick's sole contact with the criminal justice system, and he has otherwise been a law-abiding, productive member of society.

24. Mr. Flick was born in Miami, Florida in 1951. He and his wife married in 1974, and are the parents of three grown children and have five grandchildren. They have lived in Douglasville, Georgia for more than thirty years, where Mr. Flick has contributed greatly to the betterment of society and to his community.

        *(1)      Progressing Commerce, Science, the Useful Arts, and Safety*

25. Mr. Flick is a self-made man who has advanced the safety, enjoyment, and experience of automobile drivers around the world. Beginning in his late teens and with only a high-school education, he learned that he had a gift for electronics and for inventions. Putting these skills to use, he began to sell and install rudimentary car alarms of his own design,[1] as well as eight-track tape decks and CB radios out of his car at flea markets.

26. At the approximate age of 20, he then opened a small store in Miami, and in 1982 he moved his business to Atlanta. He continued grow his car audio and car security business by

---

[1] When he was approximately 20 years old, Mr. Flick had his car broken into. The break-in was largely unsuccessful because the young inventor had customized the installation of his eight-track tape deck to make it virtually theft-proof. This experience gave him the inspiration to design a car alarm – one of the very first – a siren that would go off if the car door was opened. After some trial and error, it eventually worked without draining the battery. His friends were interested in this alarm, and dealerships in Miami started to learn of his custom car alarms. This eventually led to his first storefront.

6

developing after-market inventions and by expanding a wholesale distribution network.

27.     In the mid-1990s, Mr. Flick began to file patents on some of his earlier inventions, and as of today, he now owns more than 150 U.S. patents and numerous parallel foreign patents.

28.     In the 2000s, Mr. Flick began to manage his portfolio of patents by licensing his technology to other companies in the car audio and security industry.

29.     Since 2003, his holding company has earned more than $50 million in revenue from these licensing arrangements.

30.     In 2010, Mr. Flick sold his distribution business to Audiovox (now called Voxx Corp.), but he continues to manage his patent and licensing portfolio and invent new products.

31.     Mr. Flick's most significant contributions to the automobile industry relate to his patents for a vehicle's data bus, the computer network within modern vehicles (which controls the codes for RPM, engine speed, centrifugal force, acceleration, and deceleration, etc.), and others relating to GPS tracking.

32.     Aside from these inventions, Mr. Flick's ideas, some of which have been patented and others which were shared as aftermarket improvements with auto-manufacturers (prior to his patenting) have made drivers more safe, include: keyless entry (i.e. the "chirp" to lock, and "chirp-chirp" to unlock), multi-tonal car alarm siren, remote starting, remote interior lighting, push to start, and even the panic button on car remotes among others.

33.     Mr. Flick's innovations have protected the safety of drivers and protected their assets from loss.  With his distribution business, Mr. Flick has sold millions of car alarms, some of his own design (the Viper car alarm) and other designs to drivers around the world.

34.     Mr. Flick has also contributed to the welfare of U.S. workers.  Before selling his distribution business, he directly employed nearly one hundred employees out of his Atlanta warehouse in the 1990s.

*(2)     Advancing the Interests of Community and Society*

35.     Mr. Flick is an active participant in his community. He is dedicated to his faith, and attends church services regularly.

36.     Mr. Flick has been a member of a political party for more than twenty years, and frequently makes his home available to host events and fundraisers for federal, state, and local candidates for public office.

37.     Mr. Flick and his wife have given generously to social causes. From 2005 to 2015, they made charitable donations of approximately $8,850,000. From 1987 to 2004, they made additional charitable donates in the approximate amount of $1,191,000. This $10 million in charitable donations have supported the Catholic Archdiocese of Atlanta, St. Theresa's Catholic Church, the Boys and Girls Club of Metro Atlanta, Harvester Christian Academy, Life Tools Community Development Corporation, the Rotary Club of Douglas County, Meals on Wheels Atlanta, and the Quincy Jones Foundation.

38.     In 2014, in atonement for his crimes, Mr. Flick also made a $100,000 donation to MusiCares, the charitable arm of the GRAMMY Foundation. MusiCares provides, *inter alia*, substance abuse counseling and recovery services to musicians seeking help with substance abuse problems.

39.     Leading members of the community, such as business leaders, religious leaders, elected local, state, and federal representatives, can attest to Mr. Flick's law-abiding nature and responsible citizenship since his non-violent felony convictions in 1987.

D.     <u>No Risk to Public Safety</u>

40.     Since his 1987 non-violent federal convictions, Mr. Flick has been a responsible, law-abiding citizen. Mr. Flick's responsible, law-abiding conduct has been recognized and affirmed by the State of Georgia, the Government of Canada, and the U.S. Attorney who

initially prosecuted Mr. Flick.

41.     On July 29, 1994, the Georgia State Board of Pardons and Paroles entered an Order of Restoration of Civil and Political Rights Including Restoration of the Right to Bear Arms based on Mr. Flick's federal convictions.  The Order expressly restored, pursuant to Georgia state law, Mr. Flick's rights to possess a firearm:

> ORDERED FURTHER that all civil and political rights including the right to receive, possess or transport in commerce a firearm, lost as a result of the above stated [*U.S. v. Flick*, CR87-206-A, (N.D. Ga. July 21, 1987)] and sentences any imposed prior thereto, be and each and all are hereby restored.

42.     Mr. Flick filed an application for criminal rehabilitation under subsection 36(3)(c) of the *Canadian Immigration and Refugee Protection Act* to remove a bar to inadmissibility arising from his 1987 non-violent felony convictions. On November 25, 2008, after its own investigation, the Government of Canada indefinitely approved Mr. Flick for rehabilitation, removed his bar to inadmissibility, and gave him a permit for border crossings.  Decision Letter from the Canadian Embassy, File No. D040700004 / V040600857, dated November 25, 2008.

43.     The U.S. Attorney, Bob Barr, who prosecuted Mr. Flick for copyright infringement nearly thirty years ago, subsequently served as a member of Congress from 1995 to 2003.  As recently as January 2017, Mr. Barr has written that he supports the restoration of Mr. Flick's rights based on his personal knowledge of Mr. Flick, his reputation in the community, his extensive civic work, his religious and charitable contributions, and his professional accomplishments as a leader in the vehicle safety and security field.

        E.     <u>Empirical Research:  NIJ Study on White Collar Offenses</u>

44.     Peer-reviewed, criminological, Department of Justice-commissioned research confirms that the motivation behind Mr. Flick's criminal copyright infringement, similar to other one-

time felons, is an aberration in an otherwise law-abiding life that is unlikely to reoccur.

45. In 1993, the National Institute of Justice published a study on "White Collar Crime and Criminal Careers" that examined the criminal careers of approximately 1,000 white collar offenders within the federal system. Wiesburd, D., *et al.*, "White Collar Crime and Criminal Careers, NCJ 145143, available at *https://www.ncjrs.gov/App/publications/Abstract.aspx?id=145143* (last accessed March 13, 2017) (hereinafter "NIJ Study").

46. The NIJ Study found that there are two main offender categories for white collar felons: "one-shot offenders" and "repeat offenders." NIJ Study at pgs. 4-6. "Though criminals in both [one-shot and repeat offenders] both intentionally break the law, they generally do not fit common stereotypes of criminality. [One-shot offender's] crimes appear as an aberration in what is otherwise a conventional, stable, and law-abiding life." NIJ Study at pgs. 4-5

47. One shot offenders fall within two distinct sub-categories: "crisis responders" and opportunity takers." NIJ Study at pg. 5. "We term one such group <u>crisis responders</u>, since the [Pre-Sentence Reports] indicate that these criminals are reacting to some form of financial or personal distress when they decide to participate in criminality. Most fit traditional middle-to-upper class portraits of social stability, although some are from less established social positions." NIJ Study at pg. 5.

48. The "crisis responders . . . appear to be reacting to some form of financial distress when they decide to participate in criminality." NIJ Study at pg. 31 (internal citations omitted). "The criminal acts do appear anomalous in the offenders' social records, and the fact that these offenders do not come to the attention of criminal justice agents (at least as

indicated by arrests) in the ten years or more that follow this event reinforces their own accounts." NIJ Study at pg. 32. "These people [crisis responders or opportunity takers] . . . are not committed to deviant behavior. Indeed, they evidence a high degree of stability in both their professional and personal lives. Such offenders may be likely to be strongly impacted by the process of punishment." NIJ Study at 70 (internal citations omitted).

49.     For one shot offenders, "[t]hey pass across boundaries of criminality because of some real life crisis, or some special criminal opportunity. Besides these indicators of criminality, their lives are not very different from law abiding citizens." NIJ Study at pg. 50.

50.     Mr. Flick was a one shot offender in 1987, who has lived a law-abiding and socially productive life since that time.

F.     Need to Protect Hearth and Home

51.     The USA Today calculates a crime index for localities, and reports that the crime rate in Douglasville, George is "much higher than the Georgia average crime rate and is much higher than the national average crime rate." *See http://www.usa.com/douglasville-ga-crime-and-crime-rate.htm* (last accessed March 12, 2017). In 2014, violent crimes, such murders and rapes were reported, in addition to 174 burglaries. *Id.* For 2009 to 2013, burglary rates remained steady at approximately 220 to 238 per year. *Id.*

52.     Official statistics maintained by the U.S. Department of Justice and the Federal Bureau of Investigation confirm that Georgia's crime rate for both violent crimes and property crimes is higher than the national average. *See https://www.ucrdatatool.gov/Search/Crime/State/RunCrimeStatebyState.cfm* (last accessed March 12, 2017). In 2014, the U.S. national average for violent crime was 375.7 per 100,000 people and for property crime was 2,596.1 per 100,000 people. *Id.* For the same period, the

national crime rate for burglary was 542.5. *Id.* By contrast, Georgia's property crime rate was substantially higher at 3,281.2 per 100,000, and the same holds true for burglary at 756.9 per 100,000. *Id.* (Georgia's rate for violent crime is also higher at 377.3 per 100,000).

53.     Mr. Flick, as a longtime resident of Douglasville, has been a victim of burglary and attempted burglaries in his home.

54.     In 1993, his current home was burglarized at night when his family was not home. A significant amount of property was stolen. The assailant was later apprehended and convicted.

55.     In May 2016, Mr. Flick was home during an attempted burglary. Unknown assailants were outside of the house inspecting entry points with the flashlights on their cell phones. The individuals immediately fled upon realization that the home was occupied. Upon information and belief, the police later briefly detained five suspects who were driving a vehicle in the early morning hours near his family's house.

56.     Approximately five to six years ago, Mr. Flick was home during separate incidents that occurred in the middle of the night designed to test if his home was occupied. In one instance, someone buzzed the intercom at the front gate of his driveway at approximately 1:00 a.m. and said, "we are collecting for the Hilary Foundation." In another, again in the early morning hours, someone buzzed the intercom and said, "we are thirsty, can you bring a glass of water out." In the final incident, unknown assailants in the middle of the night, when Mr. Flick was not home, came to his front door, and started to beat on the door repeatedly. Upon information and belief, neighbors called the police and the assailants fled.

57.     Aside from the home burglary and the attempted break-ins, Mr. Flick and his wife have had items repeatedly stolen in the middle of the night from their back yard and from a detached kitchen.

## V.     EXHAUSTION & INJURY

58.     There is no administrative remedy available to Mr. Flick.

59.     18 U.S.C. § 925(c) does provide that a person who is prohibited from possessing a firearm "may make an application" to the Attorney General for relief from the disabilities imposed by Federal laws." Relief from a federal firearms ban may be granted by the Attorney General where it is established "that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." 18 U.S.C. § 925(c).

60.     Beginning in 1992, Congress halted the appropriation of funding for the review of administrative petitions filed under 18 U.S.C. § 925(c). This suspension of statutorily created rights constitutes a *de facto* exhaustion of administrative remedies. *Schrader*, 704 F.3d at 982-83 ("[S]ince 1992, Congress has repeatedly barred the Attorney General from using appropriated funds to investigate or act upon relief applications, leaving the provision inoperative.") (internal quotation marks and citations omitted).

61.     The federal firearms ban as applied to Mr. Flick by 18 U.S.C. § 922(g)(1) injures, and infringes, on his right to keep and bear arms under the Second Amendment to protect hearth and home.

## VI.     CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

*INDIVIDUALIZED, AS-APPLIED CLAIM FOR RELIEF*
*RIGHT TO KEEP AND BEAR ARMS, U.S. CONST. AMEND II*

62.     Mr. Flick repeats and realleges the allegations contained in the preceding paragraphs above, inclusive.

63.     "Without the relief authorized by [18 U.S.C.] section 925(c), the federal firearms ban will remain vulnerable to a properly raised as-applied constitutional challenge brought by an individual, who, despite a prior conviction, has become a "law-abiding, responsible citizen" entitled to use "arms in defense of hearth and home." *Schrader*, 704 F.3d at 992 (quoting *Heller*, 554 U.S. at 635).

64.     Mr. Flick, despite a prior felony conviction, is a responsible, law-abiding American citizen.  He has no history of violent behavior, or of any other conduct that would suggest he would pose any more danger by possession firearms than the average, law-abiding responsible citizen.  Mr. Flick is unlikely to act in a manner dangerous to public safety, and his possession of firearms would not be contrary to the public interest.

65.     On account of Mr. Flick's unique personal circumstances, including but not limited to the nature of the felony conviction, the passage of time since the conviction, Mr. Flick's generally law-abiding record for more than thirty years, his trustworthiness with firearms and the lack of danger that his possession firearms would pose, it is unconstitutional to apply against Mr. Flick, personally, the firearms prohibition of 18 U.S.C. § 922(g)(1), on account of his felony convictions.

66.     Mr. Flick, despite a prior conviction, has become a law-abiding citizen entitled to use arms in defense of hearth and home.  *See Schrader*, 704 F.3d at 992; *Heller*, 554 U.S. at 635.

## SECOND CAUSE OF ACTION

*DECLARATORY JUDGMENT ACT*

67.     Mr. Flick repeats and realleges the allegations contained in the proceedings paragraphs above, inclusive.

68.     Mr. Flick is entitled to a declaration of his rights, namely, a declaration that

14

18 U.S.C. § 922(g)(1) cannot be applied against him on account of his 1987 non-violent federal felony convictions as it violates his rights to keep and bear arms under the Second Amendment of the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Flick hereby prays for relief as follows:

(a) A preliminary court order for a speedy hearing on the declaratory-judgment action under Rule 57 of the Federal Rules of Civil Procedure;

(b) A declaration that 18 U.S.C. § 922(g)(1) cannot be applied against Kenneth Flick on account of his 1987 convictions for criminal copyright infringement, 17 U.S.C. § 506, and smuggling counterfeit cassette tapes, 18 U.S.C. § 545;

(c) A declaration that 18 U.S.C. § 922(g)(1) as applied to Kenneth Flick, on account of his 1987 convictions for criminal copyright infringement, 17 U.S.C. § 506, and smuggling counterfeit cassette tapes, 18 U.S.C. § 545, violates the Second Amendment of the United States Constitution;

(d) An order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing 18 U.S.C. §§ 922, 924 against Kenneth Flick on the basis of his 1987 convictions for criminal copyright infringement, 17 U.S.C. § 506, and smuggling counterfeit cassette tapes, 18 U.S.C. § 545;

(e) That the Court provide further relief as it deems appropriate, just, and equitable; and

(f) That the Court grant reasonable attorney's fees, expenses and costs of court to Mr. Flick, pursuant to the Equal Access to Justice Act or any other applicable provision, to include 28 U.S.C. 2412(d).

Plaintiff demands a jury trial on any issue so triable of right by a jury.

DATED: March 22, 2017
New York, New York

                                Respectfully submitted,

                                __//s//  *Jason D. Wright*__
                                Jason D. Wright, Esq.
                                DC Bar #1029983
                                Wright Law Firm
                                40 Fulton Street, 23rd Floor
                                New York, New York 10038
                                Direct:  (212) 285-8000 x. 6365
                                Mobile:  (202) 578-0260
                                Fax:  (917) 677-8577
                                E-mail: jwright@jasonwrightesq.com

                                *Counsel for Plaintiff, Mr. Kenneth Flick*